# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br><br>William Henry THATCH Jr.<br><br>*Defendant(s)* | Case No. 1:19mj-219 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __06-20-2019 to 06-28-2019__ in the county of __Guilford__ in the __Middle__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 (a)(1) and (b)(1)(C) | Distribution of a quantity of a mixture and substance containing a detectable amount of cocaine base |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Joshua W. Wolfe
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/03/2019  9:00 AM

_____
Judge's signature

City and state: Greensboro, North Carolina

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joshua Wolfe, Task Force Officer, Drug Enforcement Administration (DEA), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1. I am a "federal law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

2. I, Joshua W. Wolfe, Task Force Officer with the Drug Enforcement Administration have been a Task Force Officer with DEA since August 2011 and am currently assigned to the DEA Atlanta Field Division, Greensboro Resident Office. I am also a sworn High Point Police Officer and have been employed as a law enforcement officer since 2001. In October 2005, I was assigned to the Street Crimes Division of the High Point Police Department, primarily dealing with street level narcotics. In August 2007, I was assigned to the Vice/Narcotics Unit as a Detective. I have received over two thousand (2,000) hours of law enforcement training. I have received over one hundred and fifty (150) hours of training involving narcotics and fifty (50)

1

hours of criminal interdiction. I have also received over one hundred hours (100) of training involving search and seizure. This training includes but is not limited to: eighty (80) hours of Police Law Institute (PLI) and forty (40) hours of Basic Undercover, and eight (8) hours of Multijurisdictional Counterdrug Task Force Training. In the time that I have been in Law Enforcement I have written at least fifty (50) search warrants and participated in over eighty (80) search warrants. I have made over two hundred and fifty (250) drug arrests which resulted in both State and Federal prosecutions. I have purchased Cocaine, Crack Cocaine, Marijuana, Heroin, Ecstasy and Methamphetamine "ICE" while acting in an undercover capacity. As a result of my training and experiences I am aware of the different types of controlled substances and the way controlled substances are packaged, distributed, and sold. Through my training, education and work experience, I have become familiar with the manner in which drug trafficking violations are committed.

3. I have been involved in this investigation since June 20, 2019. On June 20, 2019, the Drug enforcement Administration, in conjunction with the High Point Police Department, began an investigation into the drug activity of William Henry THATCH, Jr. Additionally, investigators identified

2

THATCH was on federal supervised release stemming from a 1999 conviction for Narcotics Sell Distribute and Dispense and sentenced to 240 months and 60 months supervised release. THATCH was released from the United States Bureau of Prisons after serving 210 months. THATCH is currently set for release from supervised release on September 28, 2019.

4. This Affidavit is being submitted in support of a criminal complaint charging the following:

a.) William Henry THATCH, Jr. with knowingly and unlawfully distributing a quantity containing a detectable amount of cocaine base, crack, a Schedule II controlled substance, within the meaning of Title 21, Section 812; in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## FACTS ESTABLISHING PROBABLE CAUSE

5. On June 20, 2019, High Point Police Department detectives, working in conjunction with DEA Greensboro Resident Office agents established surveillance at William Henry THATCH's residence located at 3525 Apt 1F Ramsay St., High Point, NC, in anticipation of THATCH selling to a Confidential Informant, hereafter referred to as the CI. The CI has participated in approximately 10 controlled buy operations on behalf of the

3

High Point Police Department Vice Narcotics Unit. The CI has followed directions of detectives and proven reliable. The CI has provided information concerning other narcotics traffickers and locations where distribution occurs - furthering investigations and identifying persons that would otherwise not been brought to the attention of law enforcement. The CI had described the physical characteristics of a distributor of crack cocaine as a black male, medium complexion between 30 and 40 years of age, with a gray and black goatee who distributed crack cocaine on the east side of High Point, NC, using 1505 Graves St. to sell. Furthermore, the CI stated he/she knew the subject only by the moniker "Big U." Detectives recognized the CI was possibly describing THATCH. An agent observed a subject matching THATCH depart the Ramsay Street apartment and enter a Nissan sedan operated by an unidentified female subject. An agent followed the Nissan and determined THATCH was the occupant of the Nissan. Agents and detectives followed the Nissan to 1505 Graves St., High Point, NC, and observed THATCH exit the vehicle and enter the residence. High Point Police Department detectives and DEA Greensboro Resident Office agents deployed to conduct surveillance in the vicinity of 1505 Graves St. Detectives directed the CI to travel to 1505 Graves St. in order to purchase a user

quantity of crack cocaine. Detectives searched the CI and the CI's vehicle for contraband narcotics, weapons and money. Detectives outfitted the CI with a digital transmitter/receiver capable of recording audio and video footage and provided the CI with $60.00 in United States currency. Detectives followed the CI to 1505 Graves St., High Point, NC. The CI entered the 1505 Graves St. residence and met with THATCH, who exchanged a small plastic baggie containing suspected crack cocaine for the $60.00. The CI observed, and the concealed video recording equipment recorded, that THATCH appeared to be involved in the "cooking" of crack cocaine in the kitchen area of the residence. The CI departed 1505 Graves St., met with detectives, and transferred the suspected crack cocaine, later determined to weigh approximately .5 grams, to detectives. Detectives conducted a debriefing with the CI. During the debriefing, detectives showed the CI a photo lineup consisting of eight (8) photos, one of which depicted THATCH. The CI identified THATCH as the person he/she knew as "Big U." Additionally, the CI provided THATCH's telephone number as (843) 535-7814. The detectives placed the suspected crack cocaine into temporary storage and preserved the digital audio and video footage.

6. On June 21, 2019, North Carolina State Bureau of Investigations agents obtained court authorized collection of E-911 Phase II location data for a cellular telephone used by THATCH. Investigators communicated with United States Probation officers who informed investigators that THATCH was due to attend an appointment at the United States Probation Office located in Greensboro, NC. Detectives and agents established surveillance at the United States Probation Office. Investigators observed THATCH departing the United States Probation Office and observed THATCH enter an Infiniti sedan operated by an unidentified male subject. Investigators followed THATCH to a residential address located at 2219 Shadow Valley Rd., High Point, NC. United States Probation Officers informed investigators that THATCH had asked for permission to travel outside the Middle District of North Carolina to Charlotte, NC, for the weekend. US Probation granted the request. Detectives and agents then terminated surveillance. During the evening hours, prior to his travel to Charlotte, NC, detectives were informed by the CI that THATCH was prepared to sell crack cocaine. Detectives met with the CI, searched the CI, the CI's vehicle, and provided the CI with $60.00 to purchase one (1) gram of crack cocaine. Additionally, detectives outfitted the CI with a

transmitter/receiver. The CI traveled to 1505 Graves St. and purchased approximately one (1) gram of suspected crack cocaine from THATCH. The CI departed 1505 Graves, met the detectives at a neutral location and transferred the contraband crack cocaine secured in a small plastic bundle. During a debriefing, the CI stated THATCH provided a new telephone number, (919) 537-7180. The detectives secured the crack cocaine as evidence and placed the same into temporary storage.

7. On June 24, 2019, detectives employed the CI for the purchase of 6.5 grams of crack cocaine from THATCH. The detectives searched the CI, the CI's vehicle and outfitted the CI with a transmitter/receiver and $325.00 US currency. The CI placed a recorded telephone call to THATCH prior to the operation. The CI travelled to 1505 Graves St. and conducted the transaction with THATCH who provided approximately 6.5 grams of suspected crack cocaine and approximately one (1) gram of cocaine to the CI. Detectives secured the contraband crack cocaine and cocaine as evidence placing the evidence into temporary storage.

8. On June 25, 2019, detectives conducted a buy walk employing the same CI. This buy walk operation differed with THATCH directing the CI to 1309 Camden Avenue. Additionally, the detectives noted that the

7

quality of the audio and video footage was not of the same quality as previous operations. THATCH exchanged approximately 7.0 grams of crack cocaine for $325.00. Detectives secured the suspected crack cocaine as evidence, placing the items into temporary storage.

9. On June 26, 2019, detectives transferred the contraband narcotics to the custody of the DEA for dispatch to the DEA Mid Atlantic Laboratory. While processing suspected cocaine, DEA agents conducted field tests of each exhibit. DEA agents discovered that each exhibit field-tested positive for the presumptive presence of cocaine. DEA agents dispatched the exhibits to the Mid Atlantic Laboratory for analysis and safekeeping.

10. On June 27, 2019, detectives employed the CI for the purchase of 7 grams of crack cocaine from THATCH. The detectives searched the CI, the CI's vehicle and outfitted the CI with a transmitter/receiver and $325.00 US currency. The CI placed a recorded telephone call to THATCH prior to the operation. The CI was directed by THATCH to travel to Wendy's, 2001 N. Main Street, High Point, North Carolina. Once at the Wendy's, the CI and THATCH had another telephone call and THATCH directed the CI to the Kentucky Fried Chicken, 1711 N. Main Street, High Point, North Carolina. Once in the parking lot of KFC, THATCH walked from the

residence of 1511 Long Street and met with the CI in the parking lot of KFC. The CI conducted the transaction with THATCH, who provided approximately 7 grams of suspected crack cocaine to the CI. Detectives secured the contraband crack cocaine as evidence placing the evidence into temporary storage.

11. On June 28, 2019, detectives employed the CI for the purchase of 7 grams of crack cocaine from THATCH. The detectives searched the CI, the CI's vehicle and outfitted the CI with a transmitter/receiver and $325.00 U.S. currency. The CI placed a recorded the telephone call to THATCH prior to the operation. The CI was directed by THATCH to travel to Kentucky Fried Chicken, 1711 N. Main Street, High Point, North Carolina. Once in the parking lot of KFC, THATCH arrived at the KFC in a Toyota passenger vehicle and THATCH was the front seat passenger. THATCH waved the CI over to the vehicle in which THATCH was a passenger. The CI conducted the transaction with THATCH, who provided approximately 7 grams of suspected crack cocaine to the CI. Detectives secured the contraband crack cocaine as evidence placing the evidence into temporary storage.

12. On July 1, 2019, detectives transferred the contraband narcotics to the custody of the DEA for dispatch to the DEA Mid Atlantic Laboratory. While processing suspected cocaine, DEA agents conducted field tests of each exhibit. DEA agents discovered each exhibits tested positive for the presumptive presence of cocaine. DEA agents dispatched the exhibits to the Mid Atlantic Laboratory for analysis and safekeeping.

## CONCLUSION

Based upon the aforementioned, I believe there is probable cause to believe that subject of this investigation did knowingly and intentionally commit offenses against the laws of the United States, that is:

a.) William Henry THATCH, Jr. with knowingly and unlawfully distributing a quantity containing a detectable amount of cocaine base, crack, a Schedule II controlled substance, within the meaning of Title 21, Section 812; in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

_____
JOSHUA W. WOLFE
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

SWORN TO and SUBSCRIBED before me this the __3rd__ day of July, 2019.

_____
JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA